Fareed I. Kaisani, State Bar No. 24104017
**BAKER BOTTS L.L.P.**
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone: (214) 953-6500
Fax: (214) 953-6503
fareed.kaisani@bakerbotts.com

Emanuel Grillo, Esq. (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York 10012-4498
Telephone: (212) 408-2500
Facsimile: (212) 259-2501
emanuel.grillo@bakerbotts.com

**COUNSEL FOR DIANE G. REED,
CHAPTER 7 TRUSTEE**

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **In re:** | ) Chapter 7 |
| **ERIC C. BLUE,** *et al.*,[1] | ) Case No. 19-33568-7 |
| Debtors. | ) (Jointly Administered) |

**TRUSTEE'S MOTION FOR ORDER FINDING DEBTORS IN CIVIL CONTEMPT
OF COURT AND IMPOSING COERCIVE SANCTIONS**

Diane G. Reed (the "Trustee"), the duly appointed Chapter 7 trustee of the above captioned administratively consolidated estates of Eric C. Blue ("Blue"), Capital Park Private Equity Partners, LLC ("Capital Park PEP"), and Capital Park Management Company, LLC ("Capital Park MC", and collectively, the "Debtors") hereby files this *Motion for Order Finding Debtors in Civil Contempt of Court and Imposing Coercive Sanctions* (the "Motion"), respectfully stating as follows:

**PRELIMINARY STATEMENT**

1.  The Trustee brings this Motion because the Debtors have flagrantly and repeatedly ignored their obligations to this Court and to their creditors. After failing to attend three scheduled 341 meetings, the United States Trustee filed its *Motion to Compel Debtor to Appear at Section*

---

[1] The Debtors in these jointly administered chapter 7 cases are Eric C. Blue, Capital Park Management Company, LLC, and Capital Park Private Equity Partners, LLC.

*341 Meeting of Creditors* (the "UST 341 Motion"). *See* Docket Nos. 28, 33. On May 21, 2020, this Court entered its order granting the UST 341 Motion (the "Order Compelling Appearance"). *See* Docket No 59. The Order Compelling Appearance required Debtors to appear at the section 341 meeting scheduled on June 2, 2020 at 11:00 a.m. via telephone conference. Blue could have made his appearance at the 341 meeting on June 2 from anywhere in the world through a simple phone call, but he still did not show up.

2. The section 341 meeting is not the only obligation the Debtors have willfully ignored. To this date, the Debtors have not provided any information to comply with Section 521 of the Bankruptcy Code. This is despite the fact that the Court ordered each Debtor to timely file its Section 521 Documents (defined below) in the Court's order for relief (the "Relief Order") on November 26, 2019. *See* Docket No. 8. The Debtors' ongoing failure to comply with the Relief Order prompted the Trustee to file her *Motion to Compel Filing of Section 521 Documents* (the "Trustee's 521 Motion"). *See* Docket No. 49. This Court granted the Trustee's 521 Motion by its entry of the *Order Granting Motion to Compel Filing of Section 521 Documents* (the "521 Order" and together with the Relief Order and the Order Compelling Appearance, the "Violated Orders"). *See* Docket No. 56. The Court's 521 Order was abundantly clear on what would happen if the Debtors failed to timely provide the Section 521 Documents—"if the Debtors fail to file the Section 521 Documents as provided herein, Eric C. Blue shall be in contempt of Court until and unless such documents are filed."

3. Blue is now clearly in contempt of this Court because the Section 521 Documents still have not been filed. On top of his contempt, Blue is now apparently on the move. A private investigator hired by the Trustee's counsel has uncovered that Blue has vanished from his high-rise apartment in Dallas and he is now living in a lavish condominium in Washington D.C. In

addition to skipping town, an investigation by the Trustee's counsel has raised the possibility that Blue transferred assets out of the Capital Park Debtors to new entities which Blue has an ownership interest. All of Blue's egregious conduct is compounded by the information and belief that Blue is a former practicing attorney.

4. Based on the Debtors' noncompliance of the Violated Orders and in the interests of justice, the Trustee respectfully requests that this Court enter an order (the "Order"): (i) finding Debtors in civil contempt for failing to comply with the Violated Orders; (ii) requiring Debtors to immediately comply with the Violated Orders; and (iii)(a) requiring Debtors to show cause why coercive sanctions should not be imposed within 10 days of entry of the Order and (b) if such cause is not shown, automatically issuing a bench warrant to hold Blue in custody until the Debtors' contempt is purged.

5. This motion is being filed contemporaneously with the Trustee's *Motion for Turnover of Financial Records* (the "Turnover Motion"), which ultimately seeks a confiscation of the Financial Records (as defined in the Turnover Motion). The Trustee seeks the relief in this Motion in addition to the Turnover Motion to be able to collect information that is needed from both Debtors and the Financial Records and to consolidate any efforts of the United States Marshalls Service under the respective motions. In support of this Motion, the Trustee submits the *Declaration of Fareed Kaisani in Support of (i) Trustee's Motion For Turnover of Financial Records and (ii) Motion for Order Finding Debtors in Civil Contempt of Court and Imposing Coercive Sanction.*

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the above captioned jointly administered bankruptcy case (the "Bankruptcy Case") under 28 U.S.C. §§ 157 and 1334.[2] This is a core proceeding under 28 U.S.C. § 157(b). Venue in this Court is proper under 28 U.S.C. § 1408.

## BACKGROUND

### A. Debtors Ignore the Involuntary Petitions

7. On October 29, 2019, Portfolio Secure Lone, LLC ("Petitioning Creditor") filed involuntary petitions for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") against each of the Debtors in the Bankruptcy Case.

8. On October 31, 2019, each Debtor was served with the notice of the filing of the involuntary bankruptcy petitions and of the Court's Standing Scheduling Order via email and first class and certified mail. The Debtors did not, timely or untimely, file an answer or otherwise respond to the involuntary petitions.

9. On November 9, 2019, counsel for Petitioning Creditor notified Blue that it had filed a suggestion of bankruptcy in a related state court proceeding and asked Blue to acknowledge the pending bankruptcy actions. Just prior to the Court entering the Relief Order, on November 25, 2019, counsel for Petitioning Creditor reached out to Blue to discuss the joint pre-conference statement the parties were required to file in advance of the December 6, 2019 scheduling conference. Blue responded, expressing an interest in settling matters between Debtors and Petitioning Creditor, but that he "won't be bullied into" filing bankruptcy. Counsel for Petitioning Creditor continued to reach out to Blue from November 25 to December 3 to set up a call or meeting to discuss. Blue agreed to a call but emailed shortly before that call was set to occur that

---

[2] On December 12, 2019, the Court entered its *Order (I) Directing Joint Administration of related Chapter 7 Cases and (II) Granting Related Relief*, causing Debtors' chapter 7 cases to be jointly administered. *See* Docket No. 14.

he was now unavailable at the scheduled time. In response to efforts to reschedule the call, Blue replied that he would get back "ASAP through counsel" and that he had "selected one and [was] just taking care of the engagement process." To this date, no counsel has appeared for any of the Debtors.

### B. Debtors Fail to Comply with the Court's Orders

10. On November 26, 2019, the Court entered the Relief Order against each Debtor. That same day, counsel for Petitioning Creditor provided the Relief Order to Blue, individually and on behalf of the other Debtors, by email to eric.blue@capitalpark.net. Blue acknowledged receipt of the Relief Order on November 27, 2019. The Relief Order commanded the Debtors to each file lists (the "Creditor Lists") containing the names and addresses of the Debtors' creditors within 7 days from entry of the Relief Order, meaning by December 2, 2019. The Relief Order also commanded each Debtor to file its bankruptcy schedules ("Schedules") and statement of financial affairs ("SOFA" and together with the Schedules and Creditor Lists, the "Section 521 Documents") as required by section 521 of the Bankruptcy Code within 14 days from entry of the Relief Order, meaning by December 9, 2019. The Debtors failed to timely provide the Section 521 Documents as provided for in the Relief Order. As such, Petitioning Creditor prepared the Section 521 Documents with information it possessed in accordance with the Relief Order.

11. On May 14, 2020, Trustee filed the Trustee's 521 Motion. The Court granted the Trustee's 521 Motion by entering the 521 Order on May 20, 2020, which required that the Debtors file the Section 521 Documents no later than May 27, 2020 or else Blue would be in contempt of the Court. *See* Docket No. 56. As of the filing of this Motion, the Debtors have still not filed any of the Section 521 Documents.

### C. Debtors Fail to Attend the 341 Meetings

12. The first scheduled 341 meeting in the Bankruptcy Case was scheduled for January 6, 2020. The Debtors did not appear at that first meeting, so the meeting was reset to February 11, 2020. The Debtors did not show up then either. The 341 meeting was then reset for March 11, 2020.

13. On March 9, 2020, the Blue emailed counsel for the United States Trustee with a copy to the Trustee's counsel requesting that the March 11, 2020 section 341 meeting be moved to March 18, 2020. In that email, Blue claimed to have retained counsel to assist him and that such counsel was working to get up to speed. The United States Trustee promptly responded to Blue, copying the Trustee and her counsel, requesting the contact information of Blue's counsel and telling Blue that the Trustee was the only person that could reset the meeting. Again, no counsel for any of the Debtors has appeared in this Bankruptcy Case to date.

14. On March 10, the Trustee emailed Blue – copy to David Elmquist, Linda Paquette-Gordan, Omar Alaniz, and the United States Trustee – indicating that she would not be able to reset the section 341 meeting scheduled for March 11, 2020. Blue replied that he had only gotten notice of the meeting that week and that he was in upstate New York, so he would be unable to attend. It is clear that Blue could not keep his story straight to delay the 341 meeting with the inconsistent excuses of needing time for newly retained counsel and being out of town.

15. Blue ultimately failed to show up to the March 11, 2020 section 341 meeting. The meeting was then reset to April 14, 2020, but that date was rescheduled to June 2, 2020 because of the COVID-19 pandemic. However, after failing to attend the three prior scheduled 341 meetings, the United States Trustee filed the UST 341 Motion. On May 21, 2020, this Court entered the Order Compelling Appearance requiring Blue, individually and on behalf to the other

Debtors, to appear at the 341 meeting scheduled on June 2, 2020 at 11:00 a.m. via telephone conference. Blue again failed to attend the 341 meeting set for June 2, 2020. Although Blue has been notified of all hearings and meetings scheduled in the Bankruptcy Case, Blue has yet to appear or attend.

### D. Blue Skips Town and Keeps the Businesses Going

16. The Trustee's counsel has learned from representatives of the apartment complex where Blue lived when the Bankruptcy Case was filed that Blue vanished from his high-rise apartment in Dallas sometime in January 2020. This is of course after the Debtors' involuntary petitions were filed and after the Court entered its orders for relief in these chapter 7 cases. A private investigator hired by the Trustee's counsel has uncovered that Blue is now living in a lavish condominium in Washington D.C.

17. In addition to skipping town, an investigation by the Trustee's counsel has raised the possibility that Blue has significant assets to administer. In particular, Blue appears to have a majority ownership interest in Capital Park Opportunities Fund LP, which has an ownership interest in Bridgeway National Corp. ("<u>Bridgeway</u>"). Public filings for Bridgeway show that Blue is Bridgeway's chief executive officer and that Bridgeway has a majority interest in a number of subsidiaries. Without an opportunity to examine Blue and investigate his assets and affairs and those of the Capital Park Debtors, the Trustee is unable to monetize the Debtors' assets and causes of action which could help satisfy creditor claims.

### RELIEF REQUESTED

#### A. Blue is in Contempt of This Court

18. Bankruptcy courts have the authority to conduct civil contempt proceedings. *In re Terrebonne Fuel & Lube, Inc.*, 108 F. 3d 609, 612-13 (5th Cir. 1997). In a civil contempt

proceeding, the moving party need only show (i) that a court order was in effect; (ii) the order required certain conduct by the respondent; and (iii) the respondent failed to comply with the court's order. *F.D.I.C. v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995).

19. Here, the Relief Order and the 521 Order have been in effect for an extended period. These orders have provided explicit instructions for the Debtors. Despite having months to comply and a clear warning that failure to comply with the 521 Order will result in Blue's contempt of the Court, the Debtors have made no apparent effort to obey the Court's orders. Likewise, as to the Order Compelling Appearance, no genuine dispute exists that (i) the order was in effect at the time of the June 2, 2020 section 341 meeting, (ii) the Debtors had a specific obligation, and (iii) the Debtors' failed to abide by the Court's instructions. Accordingly, this Court should find Debtors are in civil contempt of both its 521 Order and Order Compelling Appearance.

**B. Coercive Sanctions Against Blue are Necessary**

20. Coercive sanctions are needed here. In particular, a warrant for Blue's arrest and his incarceration is required until and unless he cooperates with the Trustee. In determining an appropriate civil contempt sanction, the Court should consider: (i) the harm resulting from non-compliance; (ii) the probable effectiveness of the sanction; (iii) the financial resources of the contemnor and the burden the sanctions may impose; and (iv) the willfulness of the contemnor in disregarding the Court's order. *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 567 (5th Cir. 1990). Sanctions for civil contempt can include both fines and incarceration. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828-30 (1994) (recognizing that the "paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command."); *see also See BKS Properties, Inc. v. Shumate*, 271 B.R. 794, 803 (N.D. Tex. 2002) (recommending incarceration to purge former debtor's contempt until certain

monetary sanctions were paid); *In re Norris*, 192 B.R. 863, 876 (Bankr. W.D. La. 1995) (recommending that the debtor be incarcerated until he complied with the court's order to turn over assets to the trustee), *aff'd per curiam*, 114 F.3d 1182 (5th Cir. 1997).

21. Here, the factors overwhelmingly weigh in favor of the Court issuing a bench warrant to arrest Blue in order to coerce Debtors' compliance with their obligations. The harm from Debtors' noncompliance is great. Over seven months have passed since the Court's Relief Order was entered and the Trustee still has not received any necessary information to administer the Debtors' estates. Without Blue and the information in his possession, creditors will likely receive nothing from this Bankruptcy Case as things stand. The Court's issuance of a bench warrant will be highly effective for obtaining Blue's compliance. It is abundantly clear that Blue does not take the authority of this Court seriously. If he did, the Trustee would not have to bring this Motion. Blue's arrest will coerce his responsiveness to the Trustee. But to be clear, the relief requested here is for the purpose of obtaining the Debtors' cooperation, not as a punishment to anyone. The Trustee does not seek Blue's incarceration beyond the point when he has fully cooperated with the Trustee's investigation of the Debtors and their affairs.

22. The Debtors' avoidance of their obligations is plainly willful. The record is clear that Blue has had notice of the Bankruptcy Case since its filing. Through multiple notices, Debtors have been aware of their obligations under the Bankruptcy Code and to this Court. Debtors have shown a total disregard for the Violated Orders and have repeatedly evaded any attempts to engage in conversation regarding these bankruptcy proceedings. Blue's failure to appear the June 2, 2020 section 341 meeting by teleconference shows the complete lack of effort to comply with this Court's commands. It cannot be overlooked that the disregard here is not by a layperson, but by a former practicing attorney.

23. Accordingly, the Trustee believes that coercive sanctions are the only effective means through which Debtors may be compelled to participate in this proceeding.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter the Order submitted herewith: (i) finding Debtors in civil contempt for failing to comply with the Violated Orders; (ii) requiring Debtors to immediately comply with the Violated Orders; (iii)(a) requiring Debtors to show cause why coercive sanctions should not be imposed within 10 days of entry of the Order, and (b) if such cause is not shown, automatically issuing a bench warrant for Blue's arrest until the Debtors' contempt is purged; and (iv) granting such other and further relief as is appropriate.

RESPECTFULLY SUBMITTED this 5th day of August, 2020.

**BAKER BOTTS L.L.P.**

/s/ *Fareed Kaisani*
Fareed I. Kaisani, State Bar No. 24104017
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone: (214) 953-6500
Facsimile: (214) 953-6503
Email: fareed.kaisani@bakerbotts.com

-and-

Emanuel Grillo, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10012-4498
Telephone: (212) 408-2500
Facsimile: (212) 259-2501
emanuel.grillo@bakerbotts.com

*COUNSEL FOR DIANE G. REED, CHAPTER 7 TRUSTEE*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on August 3, 2020, he attempted to discuss the relief requested herein with Eric C. Blue individually, and as a representative of Capital Park Management Company, LLC and Capital Park Private Equity Partners, LLC, by sending an email correspondence to Mr. Blue. Mr. Blue had not responded to the undersigned counsel's email correspondence at the time of filing this Motion, and thus a conference was not held.

>  /s/ *Fareed Kaisani*
>  Fareed Kaisani, Esq.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 5th day of August, 2020, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof and that, additionally, on the same date he caused true and correct copies of this document to be served by email and United States Mail on the following persons.

Eric C. Blue
1213 O Street NW
Washington DC, 20005
Eric.Blue@bridgewaynational.com
Eric.Blue@capitalpark.net

>  /s/ *Fareed Kaisani*
>  Fareed Kaisani, Esq.