| | |
|---|---|
| Amanda L. Cottrell, Esq.<br>Texas Bar No. 24064972<br>Steven G. Gersten, Esq.<br>Texas Bar No. 24087579<br>**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP<br>2200 Ross Ave, 24th Floor<br>Dallas, Texas 75201<br>Tel: (469) 391-7400<br>Fax: (469) 391-7401<br>Email: acottrell@sheppardmullin.com | Michael M. Lauter, Esq. (application for *pro hac vice* to be submitted)<br>**SHEPPARD, MULLIN, RICHTER & HAMPTON** LLP<br>Four Embarcadero Center, 17th Floor<br>San Francisco, California 94111-4109<br>Tel: (415) 434-9100<br>Fax: (415) 434-3947<br>Email: mlauter@sheppardmullin.com |

*COUNSEL TO PINEY LAKE OPPORTUNITIES ECI MASTER FUND, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **In re**<br><br>**ERIC C. BLUE,** *et al.*,[1]<br><br>          Debtors. | ) <br> ) **Chapter 7** <br> ) <br> ) **Case No. 19-33568-7** <br> ) <br> ) **Jointly Administered** <br> ) |

### PINEY LAKE OPPORTUNITIES ECI MASTER FUND, L.P.'S MOTION FOR RELIEF FROM STAY TO LITIGATE SECURITIES FRAUD ACTION AGAINST DEBTOR IN <u>UNITED STATES DISTRICT COURT</u>

> **PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.  ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITES STATES BANKRUPTCY COURT AT 1100 COMMERCE, ROOM 1254, DALLAS, TX 75242 BEFORE CLOSE OF BUSINESS ON APRIL 9, 2021, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.  A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE.  ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

---

[1] The debtors in these jointly administered chapter 7 cases are Eric C. Blue, Capital Park Management Company, LLC, and Capital Park Private Equity Partners, LLC.

-1-

Creditor Piney Lake Opportunities ECI Master Fund, L.P. ("Piney Lake") hereby files this *Motion for Relief from Stay to Litigate Securities Fraud Action Against Debtor in United States District Court* (the "Motion") and in support thereof respectfully represents as follows:

## I.
## PRELIMINARY STATEMENT

1. Piney Lake is a lender that was the victim of a fraud orchestrated by the Debtor, Eric C. Blue (the "Debtor" or "Blue"), in his capacity as a director of C-Pak Consumer Product Holdings LLC ("C-Pak") or one of its subsidiaries in May 2019. On or around that time, C-PAK entered into an agreement to purchase the Joy® and Cream Suds® brands in the United States, Canada, and certain other territories from Proctor & Gamble, Inc. ("P&G") for $30 million (the "Transaction"). As originally structured, Piney Lake was to fund C-PAK with roughly two-thirds of the purchase price with the remaining cash balance to be provided by Blue personally or through one of his affiliated entities in cash. Unbeknownst to Piney Lake, Blue, in his capacity as a board member of C-PAK Consumer Product Holdings SPV I ("SPV"), which was the sole member of C-PAK, caused C-PAK and P&G to materially change the Transaction such that P&G accepted a 120-day promissory note (the "Note") instead of cash for Blue's portion of the purchase price. In order to carry out this scheme, Blue orchestrated two separate closings at different law firms, one of which was not disclosed to Piney Lake. When Blue defaulted on the Note, Piney Lake was forced to fund the full purchase price to protect its original investment and mitigate its damages. Blue's actions, among other things, constituted violations of section 10(b) of the Securities Act of 1934 and Rule 10b-5 thereunder (the "Securities Claims").

2. Piney Lake desires to recoup some of its losses by commencing a securities fraud action against Blue in federal district court with the sole intent of recovering against a directors and officers liability insurance policy (the "D&O Policy") obtained by C-PAK that provides

coverage for Blue's fraudulent conduct as well as the costs of Blue's defense. Piney Lake therefore requests relief from the automatic stay in this bankruptcy case pursuant to § 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") so that it can commence litigation of its securities fraud action (the "Securities Action") in the United States District Court for the Northern District of Illinois.

3. Cause exists to grant Piney Lake relief from the automatic stay to pursue the Securities Action and Securities Claims because (a) it is a non-dischargeable debt and this Court lacks jurisdiction to decide the Securities Claims such that stay relief is the only way to allow Piney Lake to pursue the Securities Action, (b) the Securities Action likely will have little, if any, impact on Debtor's bankruptcy estate and assets, and (c) Piney Lake is not seeking stay relief to recover anything from the Debtor or its estate, but merely seeks to recover from applicable liability insurance obtained by C-PAK that Piney Lake believes provides coverage for the Claims.

## II.
## JURISDICTION AND VENUE

4. This Court has jurisdiction over the above-captioned bankruptcy case (the "Bankruptcy Case") under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

5. Venue in this Court is proper under 28 U.S.C. § 1408.

## III.
## STATEMENT OF FACTS

6. On or about May 3, 2019 (the "Initial Closing"), C-PAK entered into a transaction agreement with P&G to purchase assets for $30 million in cash (the "Purchase Price"). To facilitate this Transaction, Debtor induced Piney Lake to fund C-PAK with approximately $22 million to be put toward the Purchase Price and cash reserves for C-PAK's post-acquisition operations. As part of the Initial Closing, Piney Lake signed a Subscription Agreement dated May

3, 2019, stating that it was purchasing unregistered securities from SPV, an affiliate of C-PAK and Blue.

7. At some time around the Initial Closing, and unbeknownst to Piney Lake or any of C-PAK's managers other than Blue, Blue caused P&G to materially alter the terms of the Transaction such that P&G would accept a revised Purchase Price consisting of approximately $20,050,000 in cash (from the funds invested by Piney Lake at the Initial Closing) and the Note for $9,950,000 in lieu of the cash that was to have been provided by Blue or his affiliates per the original transaction agreement.

8. On or about May 13, 2019, and without the knowledge of Piney Lake, Debtor caused C-PAK to participate in a second closing (the "Second Closing") at which P&G accepted the revised Purchase Price. Debtor thereafter defaulted on the Note, resulting in P&G demanding the balance of the Purchase Price from Piney Lake. Piney Lake was ultimately forced to supply the $9,950,000 in cash to protect its original investment and mitigate its damages.

9. Just weeks after Blue defaulted on the Note, other of Blue's creditors initiated this bankruptcy proceeding by filing involuntary bankruptcy petitions against Blue and two of his affiliated entities, Capital Park Management Company, LLC and Capital Park Private Equity Partners, LLC on October 29, 2019. The filing of the involuntary chapter 7 proceeding against Blue triggered the protections of the automatic stay under § 362(a) of the Bankruptcy Code, preventing Piney Lake from suing Blue to recover the damages it suffered as a result of Blue's fraudulent conduct.

10. Given Blue's general lack of assets and his pending bankruptcy proceeding, Piney Lake intends to recover against C-PAK's D&O Policy, which provides coverage for Blue's fraudulent conduct. To do so, however, Piney Lake must name Blue as a defendant in the

Securities Action. To be clear, though Piney Lake intends to file suit against Blue, its intent is to limit any recovery to the coverage amounts afforded under the D&O Policy.

## IV.
## RELIEF REQUESTED

11. By this Motion, Piney Lake requests that the Court grant it relief from the automatic stay under § 362(a) of the Bankruptcy Code to allow Piney Lake to: (i) commence the Securities Action against Blue in federal district court and (ii) recover against the D&O Policy. Piney Lake does not seek to execute upon any judgment against the Debtor's bankruptcy estate without obtaining further relief from this Court; it merely requests the opportunity to liquidate its Claims against the Debtor in district court and to recovery from C-PAK's D&O Policy.

## V.
## ARGUMENT

12. Section 362(d) of the Bankruptcy Code provides that a bankruptcy court "shall" grant relief from the automatic stay under § 362(a) "for cause." 11 U.S.C. § 362(d). While "cause" is not defined in the Bankruptcy Code, "Congress itself provided some guidance as to what constitutes 'cause,' specifically mentioning 'a desire to permit an action to proceed to completion in another tribunal' and 'the lack of connection with or interference with the pending bankruptcy case.'"[2] A Court must, however, "balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code."[3] "There is no mandatory standard for finding "cause" in the Fifth Circuit[,]" and indeed, Courts in the Fifth Circuit have considered a variety of factors in deciding whether to lift the stay to permit a party to pursue litigation against a debtor.[4] More specifically, the

---

[2] *In re Choice ATM Enters.*, No. 14-44982-DML, 2015 Bankr. LEXIS 689, at *6-7 (Bankr. N.D. Tex. Mar. 4, 2015) (*citing* H.R. REP. No. 95-595, 343-44 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6300).
[3] *Mooney v. Gill*, 310 B.R. 543, 546 (N.D. Tex. 2002).
[4] *In re* Choice ATM Enters., 2015 Bankr. LEXIS 689, at *12; *see also In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).

Bankruptcy Court for the Northern District of Texas has cited, among others, the twelve factors set forth in the leading case of *In re Curtis*[5] and the seven factors set forth in the case of *In re Johnson*[6] before ultimately basing its decision on four factors it felt were most relevant in making

---

[5] The twelve factors set forth in *Curtis* are:
>    (1) Whether the relief will result in a partial or complete resolution of the issues.
>    (2) The lack of any connection with or interference with the bankruptcy case.
>    (3) Whether the foreign proceeding involves the debtor as a fiduciary.
>    (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to here such cases.
>    (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
>    (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
>    (7) Whether litigation in another forum would prejudice the interest of other creditors, the creditor's committee and other interested parties.
>    (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
>    (9) Whether movant's success in the foreign proceeding would result in judicial lien avoidable by the debtor under Section 522(f).
>    (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
>    (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
>    (12) The impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (citations omitted).

[6] The seven factors set forth in *Johnson* are:
>    1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate;
>    2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter;
>    3. Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial was deferred;
>    4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter;
>    5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit;
>    6. Whether the creditor has a probability of success on the merits;
>    7. And . . . whether the interests of the debtor and the estate would be better served by the resolution of the threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

*In re Choice ATM Enters.*, 2015 Bankr. LEXIS 689, at *7 n.11 (*citing In re Johnson*, 115 B.R. 634, 636 (Bankr. D. Minn. 1989).

its determination.[7] "'Ultimately, the granting of relief from the automatic stay is left to the discretion of the Bankruptcy Court and decided on a case by case basis.'"[8]

13. Here, when considering the various relevant factors, the balance of hardships weighs in favor of granting Piney Lake relief from the stay to pursue its Securities Claims against Defendant in federal district court and recover against available insurance because the Bankruptcy Court lacks jurisdiction to hear securities claims, and Piney Lake is merely seeking to recover against insurance maintained by C-PAK, which is not property of the Debtor's estate.

A. **The Bankruptcy Court Lacks Jurisdiction to Decide Securities Fraud Claims**

14. As is typical with multi-factor tests, not all of the *Curtis* or *Johnson* factors are relevant in every case, and the Court must instead focus on those factors that are most relevant to the dispute at hand. Here, the fourth *Curtis* factor has perhaps the greatest relevance to this Motion – *i.e.*, whether another forum is better suited to determine the issue.[9] Because the Bankruptcy Court lacks jurisdiction to decide securities fraud claims, as discussed in detail below, this factor weighs heavily in favor of granting Piney Lake stay relief to pursue the Securities Action in federal district court.

15. Under section 523(a)(19) of the Bankruptcy Code, a debt is non-dischargeable in bankruptcy where: "(1) the debt is for violation of securities laws or for common law fraud in connection with the sale of security; and (2) the debt [is] memorialized in a judicial or administrative order, or in a settlement agreement."[10] Given that section 523(a)(19) requires (i) a judgment or order "entered in any Federal or State judicial or administrative proceeding; (ii) [a]

---

[7] *In re* Choice ATM Enters., 2015 Bankr. LEXIS 689, at *7-12; *see also In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).
[8] *In re Choice ATM Enters.*, 2015 Bankr. LEXIS 689, at *7 (*quoting In re Fowler*, 259 B.R. 856, 858 (Bankr. E.D. Tex. 2001)).
[9] *See In re Curtis*, 40 B.R. 795, 800 (Bankr. D. Utah 1984).
[10] *Jenkins v. Jones (In re Jones)*, 600 B.R. 561, 568 (Bankr. W.D. Tex. 2019) (*citing Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 191 (Bankr. E.D. Tex. 2015).

settlement agreement entered into by the debtor; or (iii) any court or administrative order …"[11] resulting before, on, or after the date on which the debtor's bankruptcy petition was filed, bankruptcy courts have routinely "refused to determine the debtor's actual liability, requiring that there be a 'non-bankruptcy forum's determination of the [d]ebtor's having violated securities law.'"[12] Indeed, "… Section 523(a)(19) … requires that a tribunal other than the bankruptcy determine … whether a federal or state securities violation or some type of related fraud has occurred."[13]

16. This Court therefore likely lacks the jurisdiction to decide Piney Lake's claims against Blue for securities fraud. As a result, if this Court denies Piney Lake's stay relief request to pursue the Securities Action in federal district court, Piney Lake may be left without an adequate remedy for Blue's wrongdoing in connection to the Transaction. Thus, when considering the jurisdictional issues related to securities fraud claims in the context of a bankruptcy, the balance of hardships weighs heavily in favor of granting stay relief.

B. **Because Piney Lake Merely Seeks to Recover Against an Insurance Policy Maintained by a Non-Debtor, Granting Stay Relief Will Not Impact the Debtor's Bankruptcy Estate or Other Creditors**

17. Also of great relevance here are the factors cited in *Curtis* and *Johnson* regarding the availability of insurance and impact on the Debtor's estate. For instance, the first *Johnson* factor considers "[w]hether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate[.]"[14] Similarly, the fifth *Curtis* factor directs the Court to examine

---

[11] 11 U.S.C. § 532(a)(19)(B).
[12] *In re Jones*, 600 B.R. at 568 (*quoting McGraw v. Collier (In re Collier)*, 497 B.R. 877, 903 (Bankr. E.D. Ark. 2013).
[13] *In re Minardi*, 536 B.R. at 192; *see also Faris v. Jafari (In re Jafari)*, 401 B.R. 494, 495-500 (Bankr. D. Colo. 2009) (analyzing Section 523(a)(19)(B) as amended by Congress to conclude that "Subsection B evidences a conscious choice to have *the liability determination* occur outside of the bankruptcy forum…").
[14] *In re Choice ATM Enters.*, 2015 Bankr. LEXIS 689, at *7-9 n.11 (*quoting In re Johnson*, 115 B.R. at 636.

"[w]hether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation."[15] Moreover, the seventh *Curtis* factor contemplates "[w]hether the litigation in another forum would prejudice the interest of other creditors, the creditor's committee and other interested parties."[16]

18.  Recognizing that creditors will likely not obtain a significant recovery against Blue's estate in this bankruptcy case, Piney Lake believes its best chance for any recovery for the Debtor's wrongdoing with regard to the Transaction is from the D&O Policy maintained by C-PAK, which provides coverage to C-PAK for claims concerning actions of C-PAK's officers, including Blue. *See* Cassetta Decl., Ex. A. The D&O Policy provides C-PAK with $2.5 million of coverage to pay defense costs and any judgment resulting from claims made against C-PAK's directors and officers. *See* Cassetta Decl., Ex. A, p. 24. Neither Blue nor the bankruptcy estate has a direct claim to any proceeds under the D&O Policy. Moreover, although the D&O Policy likely extends coverage to Blue as a manager of C-PAK, C-PAK is the named insured, not Blue. Thus, neither the D&O Policy nor the proceeds of it are property of Blue's bankruptcy estate or in any way available to Blue's bankruptcy estate. *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 55-56 (5th Cir. 1993) ("The overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when the insurer paid on a claim. When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate. In other words, when the debtor has no legally cognizable claim to the insurance proceeds, those proceeds are not property of the estate.").

---

[15] *Id.* at *7 n.10 (*quoting In re Curtis*, 40 B.R. at 799).
[16] *Id.*

19. Given the non-dischargeable nature of the claims in the Securities Action and the fact that Piney Lake would not be seeking to recover other than against the D&O Policy, and since the D&O policy provides for advancement of Blue's costs of defense, see Cassetta Decl., Ex. A, p. 24, § V.C.6, and p. 37, lifting the stay to permit Piney Lake's suit against Blue to proceed will not diminish Blue's estate.

20. Likewise, Piney Lake's Securities Action against Blue will not prejudice Blue's creditors. Because Piney Lake seeks to recover the proceeds of the D&O Policy in the Securities Action, it will not dissipate Blue's assets. In this context, maintaining the automatic stay would not foster the core policy of the Bankruptcy Code, and it should therefore be lifted. Thus, Piney Lake believes the balance of hardships clearly weighs in favor of its requested relief from the automatic stay.

## VI.
## CONCLUSION

21. WHEREFORE, Piney Lake submits that the Court should grant Piney Lake relief from the automatic stay to pursue the Securities Action against the Debtor for its Securities Claims.

*[Signature on Following Page.]*

           Respectfully submitted,

Dallas, Texas
Dated: March 26, 2021

           **SHEPPARD MULLIN RICHTER**
           **& HAMPTON LLP**

           By: /s/ Amanda Cottrell
           Amanda L. Cottrell, Esq.
           Texas Bar No. 24064972
           Steven G. Gersten, Esq.
           Texas Bar No. 24087579
           2200 Ross Ave, 24th Floor
           Dallas, Texas 75201
           Tel: (469) 391-7400
           Fax: (469) 391-7401
           Email: acottrell@sheppardmullin.com
           Email: sgersten@sheppardmullin.com

           -and-

           Michael M. Lauter, Esq. (application for *pro hac vice* to be submitted)
           Four Embarcadero Center, 17th Floor
           San Francisco, California 94111-4109
           Tel: (415) 434-9100
           Fax: (415) 434-3947
           Email: mlauter@sheppardmullin.com

           *Counsel to Piney Lake Opportunities ECI Master Fund, L.P.*

## CERTIFICATE OF CONFERENCE

    The undersigned hereby certifies that on March 26, 2021, one of movant's counsel attempted to contact Mark Castillo, attorney of record for Debtor Eric C. Blue, via telephone and email. Movant assumes Debtor is opposed to the relief requested. Movant's counsel also conferred with David Elmquist, attorney for the Chapter 7 Trustee, and he confirmed the Trustee does not oppose this motion.

           /s/ Amanda L. Cottrell
           Amanda L. Cottrell

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on March 26, 2021, a true and correct copy of the foregoing document was served by the Court's CM/ECF system on all parties requesting or consenting to such service in this case. Additionally, on the same date, the undersigned caused true and correct copies of this document to be serviced by United States Mail on the following persons:

David W. Elmquist
Reed & Elmquist, P.C.
501 N. College Street
Waxahachie, TX 75165
*Attorneys For Diane G. Reed,*
*Chapter 7 Trustee*

Mark A. Castillo
Robert Coleman Rowe
Curtis Castillo PC
901 Main Street, Suite 6515
Dallas, TX 75202

Meredyth Kippes
United States Trustee
1100 Commerce St. Rm. 976
Dallas, Texas 75242

                                            /s/ Amanda L. Cottrell
                                            Amanda L. Cottrell